# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL SALABAJ, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>STUBHUB HOLDINGS, INC., ERIC H. BAKER, CONNIE JAMES, MARK STREAMS, SAMEER BHARGAVA, JEREMY LEVINE, J.P. MORGAN SECURITIES LLC, GOLDMAN SACHS & CO. LLC, BOFA SECURITIES, INC., EVERCORE GROUP L.L.C., BMO CAPITAL MARKETS CORP., MIZUHO SECURITIES USA LLC, TD SECURITIES (USA) LLC, TRUIST SECURITIES, INC., NOMURA SECURITIES INTERNATIONAL, INC., WR SECURITIES, LLC, CITIZENS JMP SECURITIES, LLC, OPPENHEIMER & CO. INC., WEDBUSH SECURITIES INC., and PNC CAPITAL MARKETS LLC,<br><br>    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Daniel Salabaj ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by StubHub Holdings, Inc. ("StubHub" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by StubHub; and (c) review of other publicly available information concerning StubHub.

## NATURE OF THE ACTION AND OVERVIEW

1.    This is a class action on behalf of persons and entities that purchased or otherwise acquired StubHub common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's September 2025 initial public offering ("IPO" or the "Offering"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act").

2.    StubHub operates a global ticketing marketplace for live events where fans can buy tickets from sellers of all types through the Company's StubHub and viagogo websites and mobile applications.

3.    Just two weeks before the end of third quarter 2025, on September 17, 2025, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 34,042,553 shares of Class A common stock at a price of $23.50 per share. The Company received proceeds of approximately $758.0 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used to repay certain debt, satisfy anticipated tax withholding and

remittance obligations, and for general corporate purposes, including working capital, operating expenses and capital expenditures or to acquire or make investments in businesses, products, offerings and technologies.

4.    On November 13, 2025, after the market closed, StubHub issued a press release announcing financial results for the third quarter 2025, which ended September 30, 2025. The press release revealed free cash flow of negative $4.6 million in the quarter, a ***143% decrease from the Company's free cash flow in the year ago period,*** which was positive $10.6 million. The press release further revealed the Company's net cash provided by operating activities was only $3.8 million, a ***69.3% decrease from the year ago period***, where the Company reported $12.4 million in net cash provided by operating activities.

5.    On the same date, the Company filed its Form 10-Q for the same quarterly period ended September 30, 2025, with the SEC. The quarterly report revealed that this year-over-year decrease "***primarily reflects changes in the timing of payments to vendors.***"

6.    On this news, StubHub's stock price fell $3.95 per share, or 20.9%, to close at $14.87 per share on November 14, 2025, on unusually heavy trading volume.

7.    By the commencement of this action, the Company's stock was trading as low as $10.31 per share, a nearly 56% decline from the $23.50 per share IPO price.

8.    The Registration Statement was materially false and misleading and omitted to state: (1) the Company was experiencing changes in the timing of payments to vendors; (2) those changes had a significant adverse impact on free cash flow, including trailing 12 months ("TTM") free cash flow; (3) as a result, the Company's free cash flow reports were materially misleading; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77(*l*)(2), and 77o).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b). In addition, the Company's principal executive offices are located in this District.

13.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

14.     Plaintiff Daniel Salabaj, as set forth in the accompanying certification, incorporated by reference herein, purchased StubHub common stock pursuant or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant StubHub is incorporated under the laws of the Delaware with its principal executive offices located in New York, New York. StubHub's shares trade on the New York Stock Exchange ("NYSE") exchange under the symbol "STUB."

16.     Defendant Eric H. Baker ("Baker") was, at all relevant times, the Chief Executive Officer ("CEO") of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17.     Defendant Connie James ("James") was, at all relevant times, the Chief Financial Officer ("CFO") of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18.     Defendant Mark Streams ("Streams") was, at all relevant times, Executive Vice Chairman, General Counsel, and a director of the Company, and he signed or authorized the signing of the Registration Statement filed with the SEC.

19.     Defendant Sameer Bhargava ("Bhargava") was, at all relevant times, a director of the Company and signed or authorized the signing of the Registration Statement filed with the SEC.

20.     Defendant Jeremy Levine ("Levine") was, at all relevant times, a director of the Company and signed or authorized the signing of the Registration Statement filed with the SEC.

21.

22.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for the Company's IPO. In the IPO, J.P. Morgan agreed to purchase 11,042,216 shares of the Company's common stock, exclusive of the overallotment option.

23.     Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") served as an underwriter for the Company's IPO. In the IPO, Goldman Sachs agreed to purchase 10,680,176 shares of the Company's Class A common stock, exclusive of the over-allotment option.

24.     Defendant BofA Securities, Inc. ("BofA") served as an underwriter for the Company's IPO. In the IPO, BofA agreed to purchase 3,696,049 shares of the Company's Class A common stock, exclusive of the over-allotment option.

25.     Defendant Evercore Group L.L.C. ("Evercore") served as an underwriter for the Company's IPO. In the IPO, Evercore agreed to purchase 2,156,028 shares of the Company's Class A common stock, exclusive of the over-allotment option.

26.     Defendant BMO Capital Markets Corp. ("BMO") served as an underwriter for the Company's IPO. In the IPO, BMO agreed to purchase 770,010 shares of the Company's Class A common stock, exclusive of the over-allotment option.

27.     Defendant Mizuho Securities USA LLC ("Mizuho") served as an underwriter for the Company's IPO. In the IPO, Mizuho agreed to purchase 770,010 shares of the Company's common stock, exclusive of the over-allotment option.

28.     Defendant TD Securities (USA) LLC ("TD") served as an underwriter for the Company's IPO. In the IPO, TD agreed to purchase 770,010 shares of the Company's common stock, exclusive of the over-allotment option.

29.     Defendant Truist Securities, Inc. ("Truist") served as an underwriter for the Company's IPO. In the IPO, Truist agreed to purchase 770,010 shares of the Company's Class A common stock, exclusive of the over-allotment option.

30.     Defendant Nomura Securities International, Inc. ("Nomura") served as an underwriter for the Company's IPO. In the IPO, Nomura agreed to purchase 731,510 shares of the Company's Class A common stock, exclusive of the over-allotment option.

31.    Defendant WR Securities, LLC ("WR") served as an underwriter for the Company's IPO. In the IPO, WR agreed to purchase 38,500 shares of the Company's common stock, exclusive of the overallotment option.

32.    Defendant Citizens JMP Securities, LLC ("Citizens") served as an underwriter for the Company's IPO. In the IPO, Citizens agreed to purchase 462,006 shares of the Company's common stock, exclusive of the over-allotment option.

33.    Defendant Oppenheimer & Co. Inc. ("Oppenheimer") served as an underwriter for the Company's IPO. In the IPO, Oppenheimer agreed to purchase 462,006 shares of the Company's common stock, exclusive of the over-allotment option.

34.    Defendant Wedbush Securities Inc. ("Wedbush") served as an underwriter for the Company's IPO. In the IPO, Wedbush agreed to purchase 462,006 shares of the Company's common stock, exclusive of the over-allotment option.

35.    Defendant PNC Capital Markets LLC ("PNC ") served as an underwriter for the Company's IPO. In the IPO, PNC agreed to purchase 1,232,016 shares of the Company's common stock, exclusive of the over-allotment option.

36.    Defendants Baker, James, Streams, Bhargava, and Levine are collectively referred to hereinafter as the "Individual Defendants."

37.    Defendants J.P. Morgan, Goldman Sachs, BofA, Evercore, BMO, Mizuho, TD, Truist, Nomura, WR, Citizens, Oppenheimer, Wedbush, and PNC are collectively referred to hereinafter as the "Underwriter Defendants."

38.    Defendants Stubhub, Baker, James, Streams, Bhargava, Levine, J.P. Morgan, Goldman Sachs, BofA, Evercore, BMO, Mizuho, TD, Truist, Nomura, WR, Citizens, Oppenheimer, Wedbush, and PNC, are collectively referred to hereinafter as "Defendants."

## CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired StubHub common stock issued in connection with the Company's IPO. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

40.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, StubHub's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by StubHub or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

42.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

43.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of StubHub; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

44.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

45.     StubHub operates a global ticketing marketplace for live events where fans can buy tickets from sellers of all types through the Company's StubHub and viagogo websites and mobile applications.

### The Company's False and/or Misleading
### Registration Statement and Prospectus

46.     On March 21, 2025, the Company filed its Registration Statement on Form S-1 with the SEC, which forms part of the Registration Statement.

47.     On September 8, 2025, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective on September 16, 2025.

48.     On September 17, 2025, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement.  In the IPO, the Company sold approximately 34,042,553 shares of Class A common stock at a price of $23.50 per share. The Company received proceeds of approximately $758.0 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used to repay certain debt, satisfy anticipated tax withholding and remittance obligations, and for general corporate purposes, including working capital, operating expenses and capital expenditures or to acquire or make investments in businesses, products, offerings and technologies.

49.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

50.     Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

51.     The Registration Statement stated that StubHub believes "free cash flow is a meaningful indicator of liquidity for management and investors" and reported the Company's free cash flow financial metrics, as follows, in relevant part:

**_Free Cash Flow_**

We define free cash flow as net cash provided by (used in) operating activities less capital expenditures, which includes purchases of property and equipment, purchases of intangible assets and capitalized software development costs. We believe that free cash flow is a meaningful indicator of liquidity for management and investors and, in particular, the amount of cash generated from operations that, after capital expenditures, can be used for strategic initiatives, including continuous investment in our business and strengthening our balance sheet. A limitation of the use of free cash flow is that it does not represent the total increase or decrease in our cash balance for the period. Free cash flow should not be considered in isolation

or as an alternative to cash flows from operations and should be considered alongside our other financial liquidity measures, such as net cash provided by (used in) operating activities and our other GAAP results.

The following table presents a reconciliation of net cash provided by (used in) operating activities, the most directly comparable financial measure presented in accordance with GAAP, to free cash flow:

| | Six Months Ended June 30, | | Year Ended December 31, | | |
|---|---|---|---|---|---|
| | 2025 | 2024 | 2024 | 2023 | 2022 |
| | | | (in thousands) | | |
| Net cash provided by (used in) operating activities[1] | $177,641 | $398,578 | $ 261,487 | $ 307,391 | $ (47,521) |
| Less: Purchases of property and equipment | (798) | (680) | (1,666) | (1,722) | (1,648) |
| Less: Purchases of intangible assets | (942) | (1,182) | (2,086) | (1,706) | — |
| Less: Capitalized software development costs | (15,075) | (1,583) | (2,625) | (2,009) | (658) |
| Free cash flow | $160,826 | $395,133 | $ 255,110 | $ 301,954 | $ (49,827) |

52.    The Registration Statement alleged "[s]easonal trends in our GMS and the timing of major events throughout the year impact free cash flow." Specifically, the Registration Statement stated as follows, in relevant part:

Seasonal trends in our GMS and the timing of major events throughout the year impact free cash flow for any given quarter and can vary year to year. For example, in 2024 an atypical concentration of seller payments resulted in negative free cash flow for the fourth quarter. As a result, we track our TTM free cash flow to account for the timing difference in when we receive cash, which is at the time of transaction, and when we remit cash to sellers, which is at a later date. **_TTM free cash flow provides a longer-term view of our business that is less impacted by the seasonality of GMS and seller payments._**

For the year ended December 31, 2023, free cash flow was $302.0 million compared to free cash flow of $(49.8) million for the year ended December 31, 2022. The increase in free cash flow was driven by rapid growth of our business and operating leverage following the integration of StubHub, our capital-light business model and our favorable working capital dynamic, which drives cash flow generation as our GMS grows, offset by interest payments on our outstanding debt.

For the year ended December 31, 2024, free cash flow was $255.1 million compared to free cash flow of $302.0 million for the year ended December 31, 2023. The decrease in free cash flow was primarily driven by a strategic decision to invest in new initiatives, such as direct issuance.

In the first half of 2025, free cash flow was $160.8 million compared to free cash flow of $395.1 million in the first half of 2024. The decrease in free cash flow primarily reflects changes in the timing of cash receipts and payments associated with ticket sales as well as timing of payments to vendors.

53.    The Registration Statement also reported the following chart to show the "trailing 12 months ('TTM') free cash flow for the periods presented:"



54.    The Registration Statement further purported to warn of certain risk factors which "***may***" or "***could***" impact the Company's financial results. The Registration Statement purported that the Company's "results of operations vary from quarter to quarter" and may depend on the "timing of and demand for certain tours, tour cancellations, event ticket sales, seasonal and other fluctuations in our results of operations, the timing of guaranteed payments, financing activities, acquisitions and investments and receivables management." Specifically, the Registration Statement stated as follows, in relevant part:

> ***Our results of operations vary from quarter to quarter and year over year, so our financial performance in certain financial quarters or years may not be indicative of, or comparable to, our financial performance in subsequent financial quarters or years.***
>
> We believe our financial results and cash needs will vary greatly from quarter to quarter and year to year depending on, among other things, ***the timing of and demand for certain tours, tour cancellations, event ticket sales, seasonal and other fluctuations in our results of operations, the timing of guaranteed payments, financing activities, acquisitions and investments and receivables***

***management.*** For example, the timing of and demand for top sporting events and concert tours, such as the Super Bowl, the UEFA Champions League Final, the FIFA World Cup, Elton John's "Farewell Yellow Brick Road" tour, Taylor Swift's "Eras" tour, can impact comparability of quarterly results year-over-year, and potentially annual results also. Similarly, the number of games or matches in sports playoff series, the teams involved and demand for certain games or matches can vary year-over-year and impact our results. We have in the past experienced variations in revenue based on the timing of and demand for certain experiences or events, such as major sports league seasons, the timing of certain international sporting events, tour schedules of certain artists and popular theater or concert events. Because our results may vary significantly from quarter to quarter and year to year, our financial results for one quarter or year cannot necessarily be compared to another quarter or year and may not be indicative of our future financial performance in subsequent quarters or years. Moreover, seasonality in our business could create cash flow management risks if we do not adequately anticipate and plan for periods of decreased activity, which could adversely impact our ability to execute on our strategy, which in turn could harm our business, financial condition, results of operations and prospects.

55.     The Registration Statement was materially false and misleading and omitted to state: (1) the Company was experiencing changes in the timing of payments to vendors; (2) those changes had a significant adverse impact on free cash flow, including TTM free cash flow; (3) as a result, the Company's free cash flow reports were materially misleading; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

### The Subsequent Disclosures

56.     On November 13, 2025, after the market closed, StubHub issued a press release announcing financial results for the third quarter 2025, the Company's first earnings since its IPO. The press release revealed free cash flow of negative $4.6 million in the quarter, a ***143% decrease from the Company's free cash flow in the year ago period,*** which was positive $10.6 million. The press release further revealed the Company's net cash provided by operating activities was only $3.8 million, a ***69.3% decrease from the year ago period***, where the Company reported $12.4

million in net cash provided by operating activities. Specifically, the press release stated as follows, in relevant part:

| | Three Months Ended September 30, | | Nine Months Ended September 30, | |
|---|---|---|---|---|
| | 2025 | 2024 | 2025 | 2024 |
| | (in thousands) | | | |
| Net cash provided by (used in) operating activities [1] | $ 3,795 | $ 12,357 | $ 181,436 | $ 410,935 |
| Less: Purchases of property and equipment | (372 ) | (646 ) | (1,170 ) | (1,326 ) |
| Less: Purchases of intangible assets | (256 ) | (588 ) | (1,198 ) | (1,770 ) |
| Less: Capitalized software development costs | (7,767 ) | (521 ) | (22,842 ) | (2,104 ) |
| Free cash flow | $ (4,600 ) | $ 10,602 | $ 156,226 | $ 405,735 |
| TTM free cash flow | $ 5,601 | $ 501,492 | $ 5,601 | $ 501,492 |

57.    On the same date, the Company filed its Form 10-Q for the same quarterly period ended September 30, 2025, with the SEC. The quarterly report revealed that "[d]uring the three months ended September 30, 2025, the decrease in free cash flow, compared to the same periods in the prior year, ***primarily reflects changes in the timing of payments to vendors.***" Specifically, the quarter report stated as follows, in relevant part:

> ***During the three months ended September 30, 2025, the decrease in free cash flow, compared to the same periods in the prior year, primarily reflects changes in the timing of payments to vendors.***
>
> During the nine months ended September 30, 2025, the decrease in free cash flow, compared to the same period in the prior year, primarily reflects changes in the timing of cash receipts and payments associated with ticket sales as well as timing of payments to vendors.
>
> During the period ended September 30, 2025, the decrease in TTM free cash flow, compared to the same period in the prior year, primarily reflects changes in the timing of cash receipts and payments associated with ticket sales as well as timing of payments to vendors.

58.     The quarterly report also reported the quarterly free cash flow and TTM free cash flow, which confirms that the year-over-year decline was a known trend at the time of the IPO. Specifically, the quarterly report stated:[1]

|  | Three Months Ended (in thousands) | | | | |
|---|---|---|---|---|---|
|  | 9/30/25 | 6/30/25 | 3/31/25 | 12/31/24 | 9/30/24 |
| FCF | ($4,600) | $9,716 | $151,110 | ($150,625) | $10,602 |
| TTM FCF | $5,601 | $20,803 | $147,529 | $225,110 | $501,492 |

59.     On this news, StubHub's stock price fell $3.95 per share, or 20.9%, to close at $14.87 per share on November 14, 2025, on unusually heavy trading volume.

60.     By the commencement of this action, the Company's stock was trading as low as $10.31 per share, a nearly 56% decline from the $23.50 per share IPO price.

**FIRST CLAIM**

**Violation of Section 11 of the Securities Act**

**(Against All Defendants)**

61.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

62.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

63.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

---

[1] The financial table has been recreated for legibility.

64.    StubHub is the registrant for the IPO.   The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

65.    As issuer of the shares, StubHub is strictly liable to Plaintiff and the Class for the misstatements and omissions.

66.    None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

67.    By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

68.    Plaintiff acquired StubHub shares pursuant and/or traceable to the Registration Statement for the IPO.

69.    Plaintiff and the Class have sustained damages.   The value of StubHub shares has declined substantially subsequent to and due to the Defendants' violations.

### SECOND CLAIM

### Violation of Section 12(a)(2) of the Securities Act

### (Against StubHub and the Underwriter Defendants)

70.    Plaintiff repeats and re-alleges each and every allegation contained above, as if fully set forth herein.

71.    By means of the defective prospectus, StubHub and the Underwriter Defendants promoted, solicited, and sold StubHub common stock to Plaintiff and other members of the Class.

72.    The prospectus contained untrue statements of material fact, and omitted to disclose material facts, as detailed above, and Defendants owed Plaintiff, and the other members of the Class who purchased StubHub common stock pursuant to the prospectus, the duty to make a reasonable and diligent investigation of the statements contained therein, to ensure that such

statements were true and that there was no omission of a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the prospectus, as set forth above.

73.    Plaintiff did not know, nor in the exercise of reasonable diligence could Plaintiff have known, of the untruths and omissions contained in the prospectus at the time Plaintiff acquired StubHub common stock.

74.    By reason of the conduct alleged herein, StubHub and the Underwriter Defendants violated Section 12(a)(2) of the Securities Act. As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased StubHub common stock pursuant to the prospectus sustained substantial damages in connection with their purchases of the shares. Accordingly, Plaintiff and the other members of the Class who hold the common stock issued pursuant to the prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their common stock to Defendants sued herein. Class members who have sold their StubHub common stock seek damages to the extent permitted by law.

## THIRD CLAIM

### Violation of Section 15 of the Securities Act

### (Against the Individual Defendants)

75.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

76.    This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

77.    The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of

StubHub within the meaning of Section 15 of the Securities Act. The Individual Defendants had the power and influence and exercised the same to cause StubHub to engage in the acts described herein.

78.     The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

79.     By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  November 24, 2025

*/s/ Rebecca Dawson*

**GLANCY PRONGAY & MURRAY LLP**
Rebecca Dawson
230 Park Ave, Suite 358
New York, New York 10169
Telephone: (213) 521-8007
Facsimile: (212) 884-0988
Email:  rdawson@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Counsel for Plaintiff Daniel Salabaj*

# SWORN CERTIFICATION OF PLAINTIFF

## STUBHUB HOLDINGS, INC. SECURITIES LITIGATION

I, Daniel Salabaj, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the StubHub Holdings, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this federal securities laws.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in StubHub Holdings, Inc. securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class in any action under the federal securities laws (15 U.S. Code, Chapter 2B; and 15 U.S. Code, Chapter 2A, Subchapter I) during the last three years.

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

11/21/2025
_____
Date

*Daniel Salabaj*
_____
Daniel Salabaj

**Daniel Salabaj's Transactions in StubHub Holdings, Inc. (STUB)**

| Date | Transaction Type | Quantity | Unit Price |
|------|-----------------|----------|------------|
| 9/17/2025 | Bought | 17 | $23.5000 |